IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kyle Tooke,<br><br>                   Plaintiff,<br><br>v.<br><br>Jon Ozmint, McKither Bodison,<br>Aaron Beach, James Blackwell,<br>Karl Von Mutius, Officer James<br>Washington, and Betty Dean<br>Thomas,<br><br>                 Defendants. | Civil Action No. 8:09-1431-MBS-BHH<br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the Defendants' Motion for Summary Judgment. (Dkt. # 42.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The Plaintiff brought this action on May 29, 2009, seeking damages for alleged civil rights violations.[1] On December 1, 2009, the Defendants filed a motion for summary judgment. (Dkt. # 42.) By order filed December 2, 2009, pursuant to *Roseboro v.*

---

[1]As there is no prison mailroom stamp indicating when it was received, this date reflects the postmark date on the envelope containing the complaint. (Compl. Attach. # 9.) *See Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

*Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. # 43.) On March 6, 2010, the Plaintiff filed a response opposing the Defendants' summary judgment motion. (Dkt. # 60.)

## FACTS

In his complaint, the Plaintiff alleges that on March 1, 2008, he was erroneously accused of having been involved in an assault on a correctional officer at Lieber Correctional Institution ("LCI"). The Plaintiff was charged with the two disciplinary charges: assault on an officer and with the threat of assault on another officer. The Plaintiff was found guilty on both counts and sanctioned with 360 days of disciplinary detention for the assault and another 180 days of disciplinary detention for the threat.

The Plaintiff states that he witnessed the March 1st incident in which another inmate, Aaron Norris, was being escorted by correctional officers from the cafeteria to operations. The Plaintiff alleges Inmate Norris removed his coat and attempted to pass it to another inmate, Ryan Thomas. (Compl. at 4.) A cell phone fell out of the coat and as an officer attempted to retrieve it, Inmate Thomas picked it up from the sidewalk and gave it to the officers. *Id*. The Plaintiff alleges he continued on to his dorm as it appeared the situation was resolved. *Id*. He alleges he then noticed officers wrestling Inmate Norris to the ground in an attempt to subdue him. *Id*. He states that Inmate Norris was maced and finally handcuffed. He alleges that other inmates began to complain that the officers had used excessive force against Inmate Norris. He states

inmates "poured out of the kitchen" and the officers pulled out their mace and formed a circle around the officers who had Inmate Norris on the ground.   (Compl. at 5.)

The Plaintiff states that a white male inmate walked out of the crowd and struck Sgt. Van Mutis in the face with a can of tuna.  *Id.*  He states the inmate then pulled a mask over his face and went back into the crowd requesting a knife from the other inmates.  *Id.*  He states a minute later, the same inmate brandished the knife in the direction of the officers, but he retreated back into the crowd, pulled off his mask, and returned to the dorm.  *Id*.

The Plaintiff states the Rapid Response Team was summoned and the inmates and their cells were searched, but no contraband was found.  (Compl. at 5.)  He alleges that then Sgt. Van Mutis went from cell to cell in an attempt to identify the inmate who had struck him.  *Id.* The Plaintiff alleges Sgt. Van Mutis passed his cell and did not give him a second look.  *Id*.  However, the next day, the Plaintiff alleges he was taken from his cell and placed in the interview room.  He alleges he remained in the interview room from March 2nd until March 7th without access to running water, hygiene materials, mattress, bedding, linens, and with inadequate ventilation and lighting.  *Id*.

He alleges he was given an incident report on March 6th which he contends was falsified.  He also alleges his rights were violated in regard to his disciplinary charges and that South Carolina Department of Corrections ("SCDC") policies were not followed after he was placed in the special management unit ("SMU") holding cell. (Compl. 6-7.) Among other things, the Plaintiff alleges he never spoke with his substitute counsel prior to the hearing, he was denied access to a surveillance tape, and he was denied the right

to present witnesses.  (Compl. 6-7.)  The Plaintiff also questions the evidence which was introduced at the disciplinary hearing and the imposition of the maximum punishment for his convictions which were first offenses.  (Compl. 7.)

The Plaintiff also alleges that Sgt. Van Mutis identified him as the inmate who had assaulted him in retaliation for a prior grievance the Plaintiff has filed against Sgt. Van Mutis.  (Compl. 8-9.)  Finally, the Plaintiff alleges the defendants conspired to find him guilty of the disciplinary charges.  (Compl. at 9.)

The Plaintiff also alleges that he attempted to file a grievance at the LCI regarding the denial of recreation time and has received only bag meals while at the LCI.   This grievance was denied because it was not filed at the proper institution and when he refiled, it was denied as untimely.   He alleges other grievances have also been unanswered.   He alleges the failure to respond to his grievances violates his First Amendment rights.  (Compl. at 8.)

The Plaintiff is seeking actual damages for each day he spent in the SMU and for his back and neck injuries and emotional hardship, a declaration the defendants violated his constitutional rights, an injunction ordering the defendants to release the surveillance tape, and punitive damages.  (Compl. at 10.)[2]

---

[2]In a letter to the court attached to his complaint, the Plaintiff states he is seeking a chance to prove his innocence of the disciplinary convictions and have his work credits reinstated.  He states he would drop this litigation completely if given the chance to view the surveillance tape.  (Compl. Ex. # 8.)

## APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at

324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Comm. Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

As stated above, the Plaintiff was convicted of two disciplinary charges from the March 1st incident: an assault on an officer and the threat of assault on another officer. The Plaintiff was sanctioned with 360 days of disciplinary detention for the assault and another 180 days of disciplinary detention for the threat.  These disciplinary convictions have not been reversed or overturned.  In his complaint, the Plaintiff states he is seeking actual and punitive damages.  In a letter to the court attached to his complaint, the Plaintiff also states he is seeking a chance to prove his innocence of the disciplinary convictions and have his work credits reinstated.  He states he would drop this litigation completely if given the chance to view the surveillance tape.

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487.  In *Edwards*, the Supreme Court applied the lessons *Heck* to a state prisoner action, where the prisoner was: (a) seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but

(b) asserting that he was neither necessarily challenging the result of that disciplinary proceeding, nor seeking the restoration of the good-time credits. The Court emphasized that such a claim was not cognizable under § 1983, since a favorable outcome would necessarily imply the invalidity of the deprivation of good time credits. *Id.* at 646-48.

In *Muhammad v. Close*, 540 U.S. 749 (2004), the Court held that *Heck* does not apply "categorically to all suits challenging prison disciplinary proceedings" and further stated "these administrative determinations do not as such raise any implication about the validity of the underlying conviction, and although they may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) that is not necessarily so." *Muhammad,* 540 U.S. at 754. Here, a judgment in the Plaintiff's favor would be a judgment at odds with the disciplinary convictions. In addition, the Plaintiff could clearly choose to challenge his loss of good time credits via a habeas action. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)(holding "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration.")

Here, a favorable outcome for the Plaintiff in this § 1983 suit would necessarily imply the invalidity of his disciplinary conviction and sentence. This is exactly the type of collateral attack that *Heck* sought to eliminate. *See Wilson v. Johnson*, 535 F.3d 262, 265 (4th Cir. 2008)("*Heck's* holding precludes a prisoner from a collateral attack that may result in two inconsistent results-for example, a valid criminal conviction and a valid civil

judgment under § 1983 for monetary damages due to unconstitutional conviction or imprisonment."). As *Heck* applies in the instant circumstance and Plaintiff has not shown that his institutional convictions and sentence have been invalidated, the Plaintiff's § 1983 claims, based on an allegedly "illegal" disciplinary hearing and related matters, are barred at this time.[3] This bar applies even though the Plaintiff also focuses his challenge on procedural aspects, since "the nature of the challenge to the procedures [is] such as necessarily [will] imply the invalidity of the judgment." *Edwards*, 520 U.S. at 645-46.

As for the Plaintiff's allegations regarding the conditions in which he was held in the interview room, these claims are without merit. The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. *Rhodes v. Chapman,* 452 U.S. 337 (1981).

---

[3]Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. *See Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). The sole remedy in federal court for a prisoner seeking restoration of good time credits or seeking to invalidate his disciplinary conviction is a habeas corpus petition. *See Edwards,* 520 U.S. 641 (1997).

Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825 (1994). In order to show that any named Defendant violated his constitutional rights, the Plaintiff must show not only that the deprivation alleged was "objectively significantly serious", but that the Defendant acted with a "sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (holding to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious," but the Defendant must also have acted with a "sufficiently culpable state of mind"). Furthermore, a plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. *Strickland,* 989 F.2d at 1380-81.

Here, the Plaintiff fails to show that his constitutional rights were violated with regard to his living conditions in the interview room and later in the SMU. (Compl. at 5-6; 8.) First, he has shown no serious or significant physical or emotional injury resulting from the alleged conditions. Further, he fails to show that subjectively the prison officials acted with a sufficiently culpable state of mind. The Plaintiff's general and conclusory allegations about the conditions of his confinement, including the nature of his food, his alleged lack of outdoor exercise, and the other complaints are simply insufficient standing alone without any supporting evidence to create a genuine issue of fact as to

whether his constitutional rights have been violated. *House v. New Castle Co.*, 824 F.Supp. 477, 485 (D.M.D. 1993)(holding plaintiff s conclusory allegations insufficient to maintain claim).

The Plaintiff also raises claims regarding the Defendants failure to properly respond to his grievances. However, even if the Defendants failed to respond to the Plaintiff's grievances, the Plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 42) be GRANTED and the Plaintiff's Complaint be Dismissed with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

June 16, 2010
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**